## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

IN RE:

AMANDA ELIZABETH SCHWENDT,     CASE NO.: 24-30840-KKS
     CHAPTER: 7

    Debtor.

_____/

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER GRANTING *UNITED STATES TRUSTEE'S CONSENT [SIC] MOTION TO DISMISS CHAPTER 7 CASE PURSUANT TO 11 U.S.C. § 707(b)(1) AND (b)(3)* (ECF No. 18)

THIS CASE came before the Court for final evidentiary hearing on January 14, 2025, on the *United States Trustee's Consent [sic] Motion to Dismiss Chapter 7 Case Pursuant to 11 U.S.C. § 707(b)(1) and (b)(3)* ("Motion to Dismiss," ECF No. 18). Appearing at the hearing were Jason Egan, trial attorney for the United States Trustee ("U.S. Trustee"), the Debtor, Amanda Elizabeth Schwendt ("Debtor" or "Ms. Schwendt"), and Cristopher Shaffer, attorney for the Debtor. At the conclusion of the hearing the Court took the Motion to Dismiss under advisement.

Having considered the Motion to Dismiss, Debtor's Response,[1] the

---

[1] *Response to United States Trustee's Consent [sic] Motion to Dismiss*, ECF No. 22 ("Response"). At the preliminary hearing on the Motion to Dismiss on December 17, 2024, the Court entertained Debtor's *ore tenus* response to the Motion to Dismiss and ordered Debtor to file a written response. ECF No. 21.

exhibits proffered by the parties and received in evidence,[2] testimony by the Debtor, and argument of counsel, for the reasons set forth below, the Motion to Dismiss is due to be granted.

The Court has jurisdiction under 28 U.S.C. § 157 and 28 U.S.C. § 1334. This constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a)(1), applicable to this case pursuant to Fed. R. Bankr. P. 7052.

<u>Factual Background.</u>

Debtor filed her Chapter 7 Petition on October 14, 2024.[3] On her Petition Debtor stated that she did not believe funds would be available to distribute to unsecured creditors.[4] In her Schedules I and J, Debtor swore that she was unemployed and reported negative monthly net disposable income of $390.50.[5] At the 341 meeting of creditors on November 12, 2024, in answer to questions by the Chapter 7 Trustee

---

[2] *See Exhibit List of United States Trustee*, ECF No. 25; *Exhibit List of Amanda Elizabeth Schwendt*, ECF No. 27; *Witness and Exhibit List of Amanda Elizabeth Schwendt*, ECF No. 30.

[3] *Voluntary Petition for Individuals Filing for Bankruptcy*, ECF No. 1 ("Petition").

[4] *Id.* at p. 6 (Question 17: "Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available to distribute to unsecured creditors?" Debtor's answer: "No.").

[5] *Schedule I: Your Income*, ECF No. 1, pp. 27–28 ("Schedule I"); *Schedule J: Your Expenses*, ECF No. 1, pp. 29–30 ("Schedule J"). This negative net disposable income included the non-debtor spouse's Social Security and VA Disability income.

Debtor testified that she had begun a "temporary" job.[6] In answer to additional questions by the U.S. Trustee, Debtor testified that she began employment with Pinnacle Staffing Group, which she described as a staffing agency, on October 16, 2024.[7] Debtor is paid $60.00 per hour; by the § 341 meeting she had been working between 24 and 40 hours per week.[8] Debtor's first bi-weekly pay check reflects net pay of approximately $4,000.00.[9]

Debtor received an offer of employment from Pinnacle Technical Resources, Inc. one (1) week before she filed her Chapter 7 Petition.[10] This offer, on a document dated October 7, 2024, with the letterhead "Pinnacle Group Workforce Solutions Provider," was admitted in evidence at the hearing.[11] The Pinnacle Letter offers Debtor the position of "PRGC Project Manager, with Pinnacle Technical Resources, Inc.," with a "tentative start date" of October 16, 2024, and pay at $60.00 per

---

[6] U.S. Trustee Exhibit 4 ("Transcript of Debtor's 341 meeting held November 12, 2024"), ECF No. 25-3 ("Transcript"), p. 10 (references to the Transcript are to the ECF pages, and not to the pages of the Transcript).

[7] *Id.* at p. 11.

[8] *Id.*

[9] *Id.* at pp. 11–12. *See also* U.S. Trustee Exhibit 2 ("Payment Advices of Debtor pay period 10/14/24-present"), ECF No. 25-2, p. 2.

[10] *United States Trustee's and Debtor's Joint Statement of Undisputed Facts*, ECF No. 29, p. 1 ("Joint Statement of Undisputed Facts").

[11] U.S. Trustee Exhibit 1 ("Copy of Debtor's offer letter and employment agreement with Pinnacle Group Inc."), ECF No. 25-1 ("Pinnacle Letter").

hour, plus 1.5 x $60.00 per hour for overtime.[12]

Debtor testified at the evidentiary hearing that the offer was conditioned upon a credit check and background investigation. This testimony does not match the conditions in the Pinnacle Letter or the attached "Terms of Employment."[13] Neither of those documents mention a credit check. The Terms of Employment mandates Debtor to cooperate fully only with drug screens or "background checks."[14]

Debtor claims she filed bankruptcy because her spouse was declared 100% disabled around 2022 and because Debtor had an unexpected job loss in January of 2024.[15] According to Debtor, after that job loss she conducted a diligent search for employment that yielded no results for six (6) months.[16] Debtor also represents that because of her spouse's disabilities, she and her spouse made modifications to their homestead. Those modifications cost money.[17]

---

[12] The letter clarifies that Debtor's position with Pinnacle is to provide service to Pinnacle's client, "Gigapower, LLC." *Id.* at p. 2.

[13] U.S. Trustee Exhibit 1, ECF No. 25-1, pp. 4–8

[14] *Id.* at p. 4. The Pinnacle Letter states further that the start date "is contingent on completing Pinnacle's onboarding process, which includes drug and background screening and verification of [Debtor's] right to work in the United States." *Id.* at p. 2.

[15] Response, ECF No. 22, p. 3.

[16] *Id.*

[17] Response, ECF No. 22, p. 4 (stating that since her spouse's diagnosis, there was an increase in expenses to handicap-proof their home).

Debtor's spouse is unemployed but receives monthly VA disability in the amount of $4,231.61 and Social Security in the amount of $2,290, which he contributes to their monthly household expenses.[18] Debtor's Schedule I reflects that these funds were the majority of Debtor's household monthly income at the time of the filing the Petition.[19] Debtor also testified that she surrendered and stopped making payments on a car pre-petition.[20] Debtor's Schedule A/B correctly reflects ownership of a single car,[21] but Debtor's Schedule J reflects two car payments.[22]

---

[18] Joint Statement of Undisputed Facts, ECF No. 29, p. 2.

[19] Schedule I, ECF No. 1, pp. 27–28.

[20] **Question:** (Counsel for the U.S. Trustee) "In those schedules there is [sic] two payments for automobiles, one for $998, one for $869, your schedules show one vehicle, a 2023 GMC Terrain, is that your vehicle?"
**Answer:** (Debtor) "It was, I turned it in because it was not working . . . ."
**Question:** "And when did you turn that vehicle in?"
**Answer:** "I want to say at the end of August, I am not 100% sure; . . . ."
**Question:** "Just so I am clear on your testimony, you turned the vehicle in August 2024?"
**Answer:** "Yes sir."
**Question:** "Prior to filing your bankruptcy case?"
**Answer:** "Yes sir."
**Question:** "So, at the time you filed, you weren't, which payment was that? The 998 or the 869?"
**Answer:** "The 869."
**Question:** "So, when you filed your bankruptcy case you were no longer making that payment?"
**Answer:** "No sir, I stopped making that payment I think in July."
Testimony of Amanda Elizabeth Schwendt, Debtor, Final Evidentiary Hearing on Motion to Dismiss, Tallahassee, FL, *In re Schwendt*, No. 24-30840-KKS (Bankr. N.D. Fla. Jan. 14, 2025), at 2:36:50–2:38:16 (recording on file with the Court; official transcript can be ordered through the Court's website).

[21] *Schedule A/B: Property*, ECF No. 1, p. 11.

[22] Schedule J, ECF No. 1, p. 30.

<u>The Parties' Arguments.</u>

The U.S. Trustee asserts that under the totality of the circumstances, permitting Debtor to obtain a Chapter 7 discharge would be an abuse of the provisions of Chapter 7. This argument is primarily based on the fact that with the income from her job, Debtor can repay all of her unsecured creditors under a thirty-six (36) month Chapter 13 plan.

Debtor does not deny her current income or her income-producing ability. Rather, Debtor urges that she should be entitled to a Chapter 7 discharge because her job is not guaranteed and she suffered hardships pre-petition that led to her filing.

<u>Analysis.</u>

Dismissal of a case under Chapter 7 is governed by 11 U.S.C. § 707. The party seeking dismissal under § 707(b), here the U.S. Trustee, bears the burden to prove, by a preponderance of the evidence, that dismissal is appropriate.[23] Analysis of the U.S. Trustee's Motion to

---

[23] *See In re Seeburger*, 392 B.R. 735, 740 (Bankr. N.D. Ohio 2008) (stating that the movant has the burden under 11 U.S.C. § 707(b)(3)(A)); *Stapleton v. Walker (In re Walker)*, 381 B.R. 620, 623 (Bankr. M.D. Pa. 2008) (stating that the movant has the burden under 11 U.S.C. § 707(b)(3)(B)); *In re Beckerman*, 381 B.R. 841, 844 (Bankr. E.D. Mich. 2008) (stating that the U.S. Trustee, as movant, carries the burden under 11 U.S.C. § 707(b)(3)(B)); *In re Burton*, 379 B.R. 732, 735 (Bankr. N.D. Ohio 2007) (stating that the Trustee, as movant, has the burden under 11 U.S.C. § 707(b)(3)).

Dismiss must begin in § 707(b)(1) of the Code, which provides, in pertinent part:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter.[24]

In the instant case, it is undisputed that Ms. Schwendt's debts are primarily consumer debts.[25] For that reason, the Court is first to evaluate whether the bankruptcy filing is abusive under the "objective means-test prescribed in § 707(b)(2)."[26] A case is presumed to be an abuse under the "means test" if the "debtor's current monthly income reduced by [certain enumerated expenses], and multiplied by 60," is more than a certain statutory threshold.[27] Here, as of the Petition date Debtor's net disposable income, as stated in her Schedules I and J, was below the threshold of the means test, so no presumption of abuse under § 707(b)(2)(A) appeared of record. Absent a presumption of abuse, the Court must evaluate whether

---

[24] 11 U.S.C. § 707(b)(1).

[25] Petition, ECF No. 1, p. 6 (Question 16: "Are your debts primarily consumer debts?" Debtor's answer: "Yes.").

[26] *In re Henebury*, 361 B.R. 595, 603 (Bankr. S.D. Fla. 2007).

[27] 11 U.S.C. § 707(b)(2)(A)(i) et. seq.; *see also Henebury*, 361 B.R. at 603. ("The means test is the embodiment of Congress' intent 'that there be an easily applied formula for determining when the Court should *presume* that a debtor is abusing the system by filing a chapter 7 petition.'" (quoting *In re Fowler*, 349 B.R. 414, 419 (Bankr. D. Del. 2006) (emphasis in original))).

the case may be an abuse under a "more subjective test of § 707(b)(3) which requires an analysis of the facts of a particular case."[28]

Section 707(b)(3), as applicable here, provides: "[i]n considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter . . . the court shall consider [whether] . . . the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse."[29] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") revised § 707(b) by lowering the standard required for dismissal under the § 707(b)(3)(B) "totality of the circumstances."[30] Prior to BAPCPA, the § 707(b)(3)(B) standard was "substantial abuse;" the standard post-BAPCPA is merely "abuse."[31]

In assessing the totality of the circumstances under § 707(b)(3)(B), courts properly consider changes in a debtor's finances that occur post-petition.[32] It is entirely proper for courts considering the "totality of the

---

[28] *Henebury*, 361 B.R. at 604 (elucidating what judicially constructed concepts a court is to use in a § 707(b)(3) subjective inquiry); *see also Kulakowski v. Walton (In re Kulakowski)*, 735 F.3d 1296, 1298 (11th Cir. 2013).

[29] 11 U.S.C. § 707(b)(3).

[30] *Witcher v. Early (In re Witcher),* 702 F.3d 619, 622 (11th Cir. 2012) ("The current version of § 707 is largely a product of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). BAPCPA made it harder to obtain chapter 7 relief by eliminating the 'presumption in favor of granting the relief requested by the debtor' that had existed in the previous version of § 707(b), adding a means test that created a presumption of abuse, and *lowering the standard from 'substantial abuse' to 'abuse.'* "(emphasis added)).

[31] *Id.*

[32] *See Henebury*, 361 B.R. at 607–610; *U.S. Tr. v. Cortez (In re Cortez)*, 457 F.3d 448 (5th Cir.

circumstances" under § 707(b)(3)(B) to consider a debtor's ability to pay his or her debts.[33]

Numerous courts considering whether a case should be dismissed as a "substantial abuse" under pre-BAPCPA § 707(b) held that the core inquiry was whether the debtor had the ability to pay a substantial portion of his or her unsecured non-priority debts.[34] As the Eleventh Circuit noted several years ago, since BAPCPA courts have differed as to whether the ability to pay is dispositive or, if not, what weight that factor should be given.[35] Some courts have held that a debtor's ability to pay is a primary, but not conclusive factor to consider when looking at the totality of the circumstances under § 707(b)(3)(B)."[36] Other courts have

---

2006) (holding that a court may act on the basis of any development occurring before the discharge is granted); *Ng. v. Farmer*, 477 B.R. 118 (B.A.P. 9th Cir. 2012) (upholding a bankruptcy court's use of discretion to consider debtor's post-petition change of income in an inquiry under § 707(b)(1)); *In re Parada*, 391 B.R. 492, 501 (Bankr. S.D. Fla. 2008) (holding that in inquiry under 11 U.S.C. § 707(b)(3)(B), a court can and may consider post-petition circumstances until the hearing on the motion to dismiss); *In re Pennington*, 348 B.R. 647, 650 (Bankr. D. Del 2006) (deciding that post-petition changes in debtor's expenses can be properly considered in the U.S. Trustee's motion to dismiss under 11 U.S.C. § 707(b)(3)(B)).
[33] *Witcher*, 702 F.3d at 620.
[34] *See Green v. Staples (In re Green)*, 934 F.2d 568, 572 (4th Cir. 1991) (citing cases).
[35] *Witcher*, 702 F.3d at 623 (citing cases and declining to decide "whether a debtor's ability to pay his or her debts can alone be dispositive under the totality-of-the-circumstances test" or "how much weight a bankruptcy court may properly give to the debtor's ability to pay as compared with other factors making up the totality of the circumstances.").
[36] *In re Fox*, 521 B.R. 520, 526–29 (Bankr. D. Md. 2014) (analyzing the "*Green* factors" from *In re Green*, 934 F.2d at 572, in the context of § 707(b)(3)(B) post-BAPCPA); *In re Norwood-Hill*, 403 B.R. 905, 912 (Bankr. M.D. Fla. 2009) (stating "[t]he Court notes that under BAPCPA, a debtor's ability to pay is still a *primary* although *not conclusive* factor to

held that the ability to pay, standing alone, is sufficient.[37]

In one such case, *In re Henebury,* the Bankruptcy Court for the Southern District of Florida dismissed the case under § 707(b)(3)(B) based on facts very similar to those here: the debtor-wife started employment and earning money "just days" after filing the petition.[38] Similarly, in *In re Maya*, the court held that where the debtor had $44,000 net disposable income with which to fund a 60-month Chapter 13 plan, the debtor's Chapter 7 filing was abusive.[39] In *In re Lamug*, the bankruptcy court granted the U.S. Trustee's motion to dismiss the Chapter 7 case based on the totality of the circumstances under § 707(b)(3)(B), where the evidence showed that the debtors' adjusted net disposable income was over $3,400.00 per month.[40]

---

consider when looking at the totality of the circumstances under § 707(b)(3)(B)." (citations omitted)).

[37] *Henebury*, 361 B.R. at 607; *U.S. Tr. v. Harris (In re Harris)*, 960 F.2d 74, 77 (8th Cir. 1992).

[38] *Henebury*, 361 B.R. at 607 (finding that the debtors' post-petition disposable income (with other adjustments not relevant here) would be sufficient to repay 100% of debtors' unsecured debt in less than fifty-six (56) months).

[39] *In re Maya,* 374 B.R. 750, 754–55 (Bankr. S.D. Cal. 2007) (finding that debtors cannot "rely on payments and expenses for property they intend to and do surrender post-petition," and holding that the bankruptcy filing was abusive).

[40] *In re Lamug*, 403 B.R. 47, 51 (Bankr. N.D. Cal. 2009). The *Lamug* court cited numerous cases in which bankruptcy courts held that a debtor's ability to pay creditors out of future disposable income was a sufficient basis to support a finding of abuse. *Id.* at 53–54 (citations omitted). The court in *Lamug* found it notable that the phrase "totality of the circumstances" was well-settled prior to the passage of BAPCPA, into which 11 U.S.C. § 707(b)(3) was written, and that Congress did not define or limit the phrase or use a different phrase in BAPCPA. *Id.* at 55.

Other courts have dismissed cases for abuse under § 707(b)(3)(B) where the debtors' net disposable income was far less than in the instant case.[41] The evidence before this Court shows that Debtor's estimated net disposable monthly income is in excess of $7,500.00.[42] This amount of net disposable income is far in excess of the debtors' net disposable incomes in *Henebury*, *Maya*, *Lamug,* and other cases*.*

In considering a debtor's net disposable income and ability to pay creditors as part of the totality of the circumstances analysis under § 707(b)(3)(B), some courts consider other factors, including :

> (1) whether unforeseen or catastrophic events such as sudden illness, disability, or unemployment propelled the debtor into bankruptcy; (2) whether the debtor's standard of living has substantially improved as a result of the bankruptcy filing or essentially remained the same; (3) the debtor's age, health, dependents, and other family responsibilities; (4) the debtor's eligibility for Chapter 13 relief and whether creditors would receive a meaningful distribution in a Chapter 13 case; (5) the age of the debts for which the debtor seeks a discharge and the period over which they were incurred; (6) whether the debtor incurred cash advances and made consumer purchases far in excess of the ability to repay; (7) whether the debtor

---

[41] *See, e.g., In re Tropper,* Case No. 09-76151-WHD, 2010 WL 9012919, *9 (Bankr. N.D. Ga. July 19, 2010) (finding that the debtors, with adjustments to their expenses, had sufficient disposable income to fund a Chapter 11 plan, and their case should be dismissed under § 707(b)(3)(B) even though they did not qualify for relief under Chapter 13); *In re Griffin,* Case No. 13-00574-GS, 2015 WL 350944, at *8 (Bankr. D. Alaska Jan. 22, 2015).

[42] U.S. Trustee Exhibit 2 ("Payment Advices of Debtor pay period 10/14/24-present"), ECF No. 25-2. The parties stipulated that Debtor's Schedules I and J reflect a negative monthly budget of $390.50 with no income from Debtor's employment, and that Debtor's average bi-weekly take home pay is $4,309.06. Joint Statement of Undisputed Facts, ECF No. 29, p. 2.

made any payments toward the debts or attempted to negotiate with her creditors; (8) the accuracy of the debtor's schedules and statement of current income and expenses; (9) whether the debtor filed the petition in good faith; (10) employment stability; (11) retirement plan contributions and the debtor's age; (12) whether living expenses can be reduced without depriving the debtor or his dependents of adequate food, clothing, shelter, and other necessities; and (13) the availability of non-bankruptcy remedies including state law relief, private negotiations, and good, old-fashioned belt tightening.[43]

Here, Debtor urges that other factors should outweigh her current income and ability to pay her creditors. Debtor places special emphasis on her job loss in January of 2024 that took several months from which to recover, and her spouse's disability. Debtor also emphasized during testimony that her current position does not provide medical, health, or disability benefits, and that her job is not necessarily guaranteed. But those factors do not outweigh the fact that Debtor can pay 100% of her unsecured debt over thirty-six (36) months in a Chapter 13.

No other factors in this case outweigh Debtor's income and ability to pay creditors. There is no evidence of any catastrophic debt that may have triggered the need for Chapter 7 relief, even taking as true that

---

[43] *In re Melady*, 619 B.R. 768, 772 (Bankr. M.D. Fla. 2019) (alteration omitted) (internal citation omitted); *see also In re Ricci*, 456 B.R. 89, 106–07 (Bankr. M.D. Fla. 2009); *In re Norwood-Hill*, 403 B.R. at 912–913.

Debtor and her spouse had to spend money retrofitting their home. Debtor is only forty-four (44) years of age and appears in good health. Clearly, no health issues are preventing Debtor from earning a very good living.[44] The evidence shows that Debtor's standard of living will dramatically improve as a result of filing this case, with her current income and if she receives a Chapter 7 discharge.

The Court concedes that Debtor's situation is not ideal. The Court is not unsympathetic to challenges that likely accompany Debtor's spouse's disability. Yet Debtor's testimony on material issues was not completely accurate or credible.

Debtor's Schedules contain some inaccuracies. A debtor's schedule of monthly expenses may include "the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the filing of the petition."[45] Debtor lists two car payments on her Schedule J: one for $998.00 and another for $869.00 per month.[46] On her Statement of Intentions filed with her Petition, Debtor stated she intended to surrender a 2023 GMC Terrain.[47] Yet Debtor knew

---

[44] Debtor testified that she has some health issues, but did not go into detail on that subject.
[45] 11 U.S.C. § 707(b)(2)(A)(iii)(I).
[46] Schedule J, ECF No. 1, p. 29, lines 17a. and 17b.
[47] *Statement of Intention for Individuals Filing Under Chapter 7*, ECF No. 1, p. 38.

that "intending" to surrender was no longer true. Debtor testified at the final evidentiary hearing that she surrendered this vehicle in August of 2024 and had not been making the monthly payments of $869 for this vehicle since July of 2024.[48] Subtracting the car payment for the vehicle that was surrendered pre-petition, Debtor's Schedule J should have reflected a net monthly income of $479.00, even without her current income from employment.[49] Knowing that she had a job offer at the time of filing the Petition, Debtor also should have selected the box at the bottom of Schedule I to indicate that she expected an increase in income within the year.[50] She did not.

Some of Debtor's testimony did not ring true. Although Debtor may be the primary care giver for her disabled spouse and their daughter, Debtor's claim that she bears the sole burden of providing for her family is simply not accurate. Debtor's Schedule I and the Joint Statement of Undisputed Facts show that Debtor's spouse is capable of contributing,

---

[48] *Supra* note 20.

[49] This is consistent with Debtor's prior income history. Debtor's income (excluding her spouse's) in 2023 was $96,615.29. *See Statement of Financial Affairs for Individuals Filing for Bankruptcy*, ECF No. 1, p. 32.

[50] Schedule I, ECF No. 1, p. 28 (Question 13: "Do you expect an increase or decrease within the year after you file this form?" Debtor's answer: "No.").

and does contribute, a total of $6,521.61 to the family's monthly household income.[51]

Other discrepancies cause the Court to question Debtor's veracity. For example, whether or how much Debtor paid her attorney for filing this case is at best unclear. If Debtor's Counsel's Disclosure of Compensation is correct, Debtor's attorney agreed to accept $2,500 for legal services, but Debtor had not paid any of that sum as of the Petition date.[52]

Perhaps most significantly, it appears that Debtor strategically filed her petition two (2) days before the official start date of the job she was offered one (1) week pre-petition. The totality of the facts and circumstances show that Debtor filed this case knowing, albeit perhaps not with 100% certainty, that she would begin making good money on October 16, 2024. Debtor does not dispute that the amount of money she began making two days after she filed this case can enable her to pay 100% of her debt over three years under a Chapter 13 plan, not including her spouse's Social Security or VA Disability income.

---

[51] Joint Statement of Undisputed Facts, ECF No. 29, p. 2.

[52] *Disclosure of Compensation of Attorney for Debtor(s)*, ECF No. 1, p. 44 ("Disclosure of Compensation"). If Debtor did not pay her attorney before she filed this case, Debtor's counsel is an unsecured creditor. *See Lamie v. United States Trustee*, 540 U.S. 526 (2004) (holding that any amount due to counsel by a Chapter 7 debtor at the time bankruptcy petition is filed is dischargeable).

CONCLUSION

With her current income, Debtor can provide unsecured creditors with a meaningful distribution. Debtor received her job offer just before, and began earning $60.00 per hour only two (2) days after, filing her Chapter 7 Petition. The U.S. Trustee has demonstrated by a preponderance of the evidence that permitting Debtor to remain in Chapter 7 and obtain a discharge would be an abuse. No other factors mitigate against dismissal. For the reasons stated, it is:

ORDERED:

1. The *United States Trustee's Consent [sic] Motion to Dismiss Chapter 7 Case Pursuant to 11 U.S.C. § 707(b)(1) and (b)(3)* (ECF No. 18) is GRANTED, unless Debtor voluntarily elects to convert her case to Chapter 13 within fourteen (14) days of entry of this Order.

2. If Debtor does not voluntarily convert this case to Chapter 13 as set forth in this Order, the U.S. Trustee shall submit a proposed order dismissing this case.

DONE and ORDERED on  April 11, 2025                          .

KAREN K. SPECIE
Chief U.S. Bankruptcy Judge

cc: All parties in interest.